FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2020 FEB -6 AM 9: 10

CLERK
SO. DIST. OF GA.

**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

ALEXANDRIA M. CLAYTON, )
)
    Plaintiff, )
)
v. )    CASE NO. CV415-93
)
SAVANNAH CHATHAM METROPOLITAN )
POLICE DEPARTMENT; OFFICER )
RANDY VEAL, individually and in )
his official capacity; CPT. )
DEVON ADAMS, individually and )
in his official capacity; )
SANTANA WILLIS, Patrol Officer, )
individually and in his )
official capacity; BETH )
ROBINSON, Human Resource )
Director, individually and in )
her official capacity; SYLVIA )
PERRY, Employee Relations )
Coordinator, individually and )
in her official capacity; )
STEPHANIE CUTTER, individually )
and in her official capacity; )
CHIEF WILLIE LOVETT, )
individually and in his )
official capacity; CHATHAM )
COUNTY, GEORGIA; and CITY OF )
SAVANNAH, by and through the )
Mayor and Aldermen; )
)
    Defendants. )
_____ )

## O R D E R

Before the Court are Defendants Randy Veal, Clarence Few,
Matthew Lopresti, Torrence Garvin, Michael Wilkins, Cleveland
Lovett, Julie Tolbert, Nicole Kohles, Keith Richardson,
Christopher Hewett, Devon Adams, Ben Heron, Santana Willis, Tambra

Shoop, Nikeya Nelson, Beth Robinson, Sylvia Perry, and Stephanie Cutter's ("Individual Defendants") Motion to Dismiss the Third Amended Complaint (Doc. 26)[1] and Defendant the Mayor and Alderman of the City of Savannah's (the "City") Motion to Dismiss the Third Amended Complaint (Doc. 30). For the following reasons, the Individual Defendants' Motion to Dismiss the Third Amended Complaint (Doc. 26) is **GRANTED IN PART** and **DENIED IN PART** and the City's Motion to Dismiss the Third Amended Complaint (Doc. 30) is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

In her third amended complaint, Plaintiff Alexandria M. Clayton claims she faced sexual harassment and racial discrimination in her workplace and was later terminated in retaliation for complaining about the harassment.[2] In June 2011, Plaintiff was hired by Defendant Savannah Chatham Metropolitan Police Department as a Law Enforcement Officer/Peace Officer.

---

[1] Defendants Clarence Few, Matthew Lopresti, Torrence Garvin, Cleveland Lovett, Julie Tolbert, Nicole Kohles, Keith Richardson, Christopher Hewett, Ben Heron, Tambra Shoop, and Nikeya Nelson were dismissed by stipulation. (Doc. 40; Doc. 41.) Defendant Michael Wilkins was also dismissed by stipulation. (Doc. 46; Doc. 47.) Accordingly, the Individual Defendants' Motion to Dismiss remains pending as to Defendants Randy Veal, Devon Adams, Santana Willis, Beth Robinson, Sylvia Perry, and Stephanie Cutter. Defendant Willie Lovett is also a remaining defendant in this action.

[2] At this stage of the litigation, the Court must accept the allegations in Plaintiff's complaint as true and draw all reasonable inferences in her favor. See Chaparro v. Carnival Corp., 693 F.3d 1333, 1335 (11th Cir. 2012).

(Doc. 25 at ¶ 27.) Plaintiff claims that from November 2011 until her retaliatory discharge, she was subject to sexual harassment from her co-workers, was forced to work in a sexually hostile work environment, and was treated differently than Caucasian employees. (Id. at ¶ 29.) Within weeks of being hired, Plaintiff claims that she was sexually harassed by Defendant Veal when he made numerous comments to Plaintiff including telling Plaintiff that she was "fine," "good looking" and making sexually suggestive and explicit comments about her body. (Id. at ¶ 30.) These comments span from November 2011 to February 2012. (Id.) Plaintiff alleges that she reported this conduct to Clarence Few and Cedric Phillips and was told to ignore the comments and conduct by Defendant Veal and that Defendant Veal was just joking around. (Id. at ¶ 31-33.) Plaintiff also told Phillips that the environment was so bad that she had requested to be transferred to another precinct and that she did not feel comfortable or safe at work. (Id. at ¶ 34.) In response, Phillips allegedly told Plaintiff to "go with the flow" and learn not to complain about every little thing. (Id.)

In January 2012, Plaintiff was training with Defendant Willis and alleges that he was mean and degrading to her and harassed her on an accident scene by making her reposition the patrol car four times and unjustly criticized the way she handled the accident. (Id. at ¶ 35.) Plaintiff alleges that she again complained to Few about Defendant Veal in January 2012 and no remedial action was

taken. (Id. at ¶ 37.) In February 2012, Plaintiff alleges that Defendant Willis made degrading comments to Plaintiff including a question about why she had "dead people make up" on and told Plaintiff that she could not come to work looking better than other women. (Id. at ¶ 38.) Also in February 2012, Plaintiff alleges that Defendant Veal yelled and cursed at Plaintiff and Plaintiff immediately contacted Few who told her to "stick to her guns" and handle the situation herself. (Id. at ¶ 39.) Plaintiff informed Few that she was going to make an official complaint about Defendant Veal. (Id.) Plaintiff also alleges other harassing conduct by Defendants who have now been dismissed. (Doc. 25 at ¶ 40-41.) Plaintiff complained of this conduct and Michael Wilkins told Plaintiff that her complaint was being forwarded to the Human Resources Department. (Id. at ¶ 41.)

On March 2, 2012, Plaintiff alleges that she was told to report to the Internal Affairs Office and that Sergeant Cleveland Lovett and Lieutenant Andre Oliver interviewed her. (Id. at ¶ 42.) Plaintiff claims that Oliver told her that her work environment was not hostile, and it was just a conduct issue on Defendant Veal's part. (Id.) Later that month, Plaintiff received an e-mail from Wilkins instructing her to report to Major Julie Tolbert's office regarding her transfer request. (Id. at ¶ 43.) Plaintiff claims that Tolbert was angry and aggressive with Plaintiff and became more so when Plaintiff explained the sexual harassment and

4

numerous complaints she had made. (Id.) After Plaintiff stated
that she could not continue to work in the environment and would
otherwise quit her job, Tolbert agreed to place Plaintiff
elsewhere. (Id.)

Plaintiff was transferred to Precinct Three, however,
Plaintiff claims that within a few months of transfer, she began
to experience retaliation. (Id. at ¶ 44-45.) Plaintiff alleges
that she was told by Sergeant Kohles that she took too long
completing an accident report and that she was denied her lunch
break by Star Corporal Richardson despite all other officers being
permitted to take their lunch break. (Id. at ¶ 45.) Plaintiff
alleges that she continued to experience harassment and
retaliation from July 18, 2012 through July 26, 2012 and suffered
severe headaches due to the stress. (Id. at ¶ 46.) Plaintiff
alleges that in August 2012, Community Resource Officer Nikeya
Nelson challenged her to a fight, which Plaintiff reported, and
that no remedial action was taken against Officer Nelson. (Id. at
¶ 47.)

Plaintiff alleges that her treatment was also due to her race
as an African American in that she observed that Defendant Veal
did not speak to Caucasian officers or other non African-American
officers in the same way he spoke to her. (Id. at ¶ 48-49.)
Plaintiff contends that Defendant Willis and other officers did
not treat non African-American females in the same manner that

they treated Plaintiff. (Id. at ¶ 50.) In October 2012, Plaintiff alleges that Defendant Adams called Plaintiff into his office and was angry at Plaintiff and told her to let Sergeant Garvin complete his investigation. (Id. at ¶ 51.) Thereafter, Captain Ben Heron updated Plaintiff on her sexual harassment complaints and informed her that Defendant Willis, Defendant Veal, Sergeant Few, and herself had all been found guilty of misconduct. (Doc. 25 at ¶ 52.) Plaintiff contends that she did not know she was being investigated and that the finding of misconduct on her part is retaliatory treatment for making the complaints. (Id.) Plaintiff was told in November 2012 that disciplinary action was forthcoming. (Id. at ¶ 53.)

Plaintiff alleges that she filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on November 19, 2012 alleging race and sex discrimination/harassment along with retaliation. (Id. at ¶ 55.) On December 7, 2012, Plaintiff alleges that she wrote a memo regarding Sergeant Garvin's hostile treatment of Plaintiff regarding a vehicle and Plaintiff's inadvertent disposal of some evidence. (Id. at ¶ 57.) Plaintiff visited Internal Affairs and reported the incident to Sergeant Tambra Shoop. (Id.) On December 28, 2012, Plaintiff received a reprimand from Sergeant Garvin and Defendant Adams regarding the incident with Officer Nelson. (Id. at ¶ 58.) Plaintiff alleges that on January 23, 2012, Patrol Training Officer Sergio Ahuyon

6

"ground his buttocks and ran his fingers up the plaintiff's right thigh" and that she reported this incident to Internal Affairs and Employee Relations Coordinator Sylvia Perry in Human Resources. (Id. at ¶ 59.) Plaintiffs claims that she went to Internal Affairs on February 1, 2013 to file a complaint against Sergeant Garvin and Defendant Adams and that Sergeant Shoop treated her in a hostile manner. (Id. at ¶ 60.) Plaintiff claims that Defendant W. Lovett was notified every time Plaintiff made a complaint. (Id.)

Plaintiff took vacation from February 9, 2013 until February 20, 2013 and alleges that, when she returned from vacation, she was taken to the Internal Affairs Office where she was notified that Defendant W. Lovett had placed her on administrative leave with pay. (Doc. 25 at ¶ 61.) Plaintiff also claims that she learned that she was under surveillance by the Internal Affairs office. (Id.) Plaintiff claims that she sent additional information to Mr. Torres, the EEOC investigator, on April 3, 2013 about the continued retaliatory treatment.[3] (Id. at ¶ 62.) Plaintiff claims that she was informed on June 12, 2013 that Defendant W. Lovett was "going to trump up felony charges against her any day." (Id. at ¶ 63.)

---

[3] Plaintiff's complaint appears to contain a drafting error regarding dates. Although Plaintiff's complaint states that Plaintiff sent additional information on April 3, 2012, Plaintiff's complaint earlier states that she filed the EEOC charge in November 2012. Thus, as Plaintiff's complaint otherwise proceeds sequentially, the Court uses April 3, 2013 as the date that Plaintiff provided additional information to the EEOC investigator.

Plaintiff claims she was placed on administrative leave with pay on June 19, 2013 and then terminated on June 26, 2013. (Id. at ¶ 64.) The termination was upheld on July 8, 2013 by Defendant Cutter after a hearing with input given by Defendant Robinson, Defendant Adams, and Defendant Perry. (Id. at ¶ 64.) Plaintiff claims in her third amended complaint that she was told that she was suspended due to a violation of City/Department policies and was told by Defendant Cutter that her termination was upheld because she failed to follow administrative leave guidelines. (Id. at ¶ 65.) On July 10, 2013, Plaintiff filed an EEOC charge alleging that she was terminated in retaliation. (Id. at ¶ 67.)

On April 16, 2015, Plaintiff filed her complaint in this Court. (Doc. 1.) On April 17, 2015, Plaintiff filed her first amended complaint. (Doc. 3.) On June 8, 2015, Plaintiff filed her second amended complaint (Doc. 7) and on June 27, 2018, Plaintiff filed her third amended complaint (Doc. 25). In her third amended complaint, Plaintiff brings claims for sexual harassment pursuant to Title VII and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution (Doc. 25 at ¶¶ 68-78), claims of race discrimination/harassment pursuant to Title VII, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution (Id. at ¶¶ 79-90), and claims for retaliation pursuant to Title VII, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment of the

United States Constitution (Id. at ¶ 92). Plaintiff's sexual harassment claims are brought against the individually named Defendants in their official capacity only. (Id. at ¶ 70.) Plaintiff's Title VII race discrimination claim is brought against the individually named Defendants in their official capacity only. (Id. at ¶ 81.) However, Plaintiff's § 1981 and Equal Protection Clause claims for race discrimination, both brought under 42 U.S.C. § 1983, are alleged against the individually named Defendants in both their individual and official capacities. (Id. at ¶ 82.) All claims for sex and race discrimination and harassment are also brought against Defendant City, Defendant Savannah Chatham Metropolitan Police Department, and Defendant Chatham County, Georgia. (Id. at ¶¶ 70; 81; 82.) Plaintiff also pleads claims for intentional infliction of emotional distress and invasion of privacy against all Defendants as well as claims for negligent/wanton retention and negligent/wanton supervision and training against Defendant City, Defendant Savannah Chatham Metropolitan Police Department, and Defendant Chatham County, Georgia. (Id. at ¶¶ 99-123.)

However, due to Plaintiff's abandonment of some claims in her responses to the Individual Defendants' Motion to Dismiss and the City's Motion to Dismiss, this Court instructed Plaintiff to supply this Court with a short brief outlining the claims she is maintaining against the Defendants. (Doc. 43.) In response,

Plaintiff states that she is maintaining her Title VII and Equal Protection Clause sexual harassment claims against the City and Defendant Chatham County, Georgia (the "Municipal Defendants"). (Doc. 45 at 1.) Plaintiff is bringing her § 1981, through § 1983, claim for racial harassment/discrimination against the Municipal Defendants and against Defendants Randy Veal and Santana Willis, in their individual capacities. (Id. at 1-2.) Plaintiff is maintaining her Title VII racial harassment/discrimination claim only against the Municipal Defendants. (Id. at 1.) Plaintiff is maintaining her retaliation claims related to the racial harassment/discrimination pursuant to § 1981, through § 1983, against the Municipal Defendants and Defendants Devon Adams, Sylvia Perry, Stephanie Cutter, Beth Robinson, and Willie Lovett, in their individual capacities, and maintaining her retaliation claims related to the racial harassment/discrimination pursuant to Title VII against the Municipal Defendants. (Id. at 1-2.) Plaintiff is maintaining her Title VII retaliation claims related to gender discrimination only against the Municipal Defendants. (Id.) Finally, Plaintiff has abandoned all state law claims against all Defendants except for the claim for intentional infliction of emotional distress which is asserted against the Municipal Defendants and Defendant Willie Lovett, in his individual capacity. (Id.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1966) (alteration in original).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570, 127 S. Ct. at 1974). For a claim to have facial plausibility, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (quotations

omitted). Plausibility does not require probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1966). Additionally, a complaint is sufficient only if it gives "fair notice of what the . . . claim is and the grounds upon which it rests." Sinaltrainal, 578 F.3d at 1268 (quotations omitted).

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Id. at 1260. However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1950. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of [plaintiff's] allegations." Sinaltrainal, 578 F.3d at 1268 (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)). That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 545, 127 S. Ct. at 1959).

**ANALYSIS**

I. INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

A. Sexual Harassment/Discrimination Claims

In her third amended complaint, Plaintiff alleges claims of sexual harassment and discrimination under Title VII and the Equal Protection Clause of the Fourteenth Amendment, brought pursuant to 42 U.S.C. § 1983. (Doc. 25 at ¶¶ 68-78.) However, Plaintiff has abandoned her claims for sexual harassment/discrimination against the Individual Defendants. (See Doc. 45 at 2 (failing to include any claims for sexual harassment/discrimination against an individual defendant).) Accordingly, all claims alleged pursuant to Title VII and the Equal Protection Clause of the Fourteenth Amendment, brought pursuant to 42 U.S.C. § 1983, alleging sexual harassment against Defendants Veal, Adams, Willis, Robinson, Perry, Cutter, and W. Lovett are **DISMISSED**.

B. Racial Discrimination/Harassment Claims

In her third amended complaint, Plaintiff alleges claims of race discrimination/harassment under Title VII, 42 U.S.C. § 1981, brought pursuant to 42 U.S.C. § 1983, and the Equal Protection Clause of the Fourteenth Amendment, brought pursuant to 42 U.S.C. § 1983. (Doc. 25 at ¶¶ 79-90.) The Title VII claims are brought

13

against the Individual Defendants in their official capacities only whereas the § 1981 and Equal Protection Clause ("EPC") claims are brought against the Individual Defendants in their official and individual capacities. (Id. at ¶ 81-82.) However, Plaintiff has abandoned these claims against the Individual Defendants except for her claims of racial harassment/discrimination asserted pursuant to § 1981, by and through § 1983, as against Defendants Veal and Willis in their individual capacities.[4] (Doc. 45 at 1-2.) Accordingly, the Court finds that Plaintiff has abandoned any claims asserted in her third amended complaint for racial harassment/discrimination pursuant to Title VII or the EPC against Defendants Veal, Adams, Willis, Robinson, Perry, Cutter, and W. Lovett and these claims are **DISMISSED**. Additionally, the Court finds that Plaintiff has abandoned any claims asserted in her third amended complaint for racial harassment/discrimination pursuant to

---

[4] In her response to the Individual Defendants' Motion to Dismiss, Plaintiff states that she has brought racial hostile environment and race discrimination/retaliation claims pursuant to 42 U.S.C. § 1981 through § 1983. (Doc. 36 at 2; 4.) Moreover, Plaintiff clarifies that she is pursuing her § 1981 racial harassment claim only against Defendants Veal and Willis. (Id. at 2.) Similarly, in response to the City's Motion to Dismiss, Plaintiff states that she "brings her racial harassment claims pursuant to 42 U.S.C. § 1981 through § 1983." (Doc. 35 at 2.)

§ 1981 against Defendants Adams, Robinson, Perry, Cutter, and W. Lovett and these claims are **DISMISSED.**

The Court now proceeds to the Individual Defendants' arguments for dismissal of Plaintiff's 42 U.S.C. § 1981, brought pursuant to § 1983, claims for racial harassment/discrimination against Defendants Veal and Willis. In their motion to dismiss, the Individual Defendants generally contend that the race discrimination claims asserted fail to state a claim as Plaintiff has failed to plead adequate facts to maintain her claims of racial harassment/discrimination. (Doc. 26, Attach. 1 at 10-15.) Additionally, the Individual Defendants argue that the claims asserted against the Individual Defendants in their official capacities must be dismissed as Plaintiff failed to sufficiently allege a deprivation of rights caused by a custom or policy of the municipality. (Id. at 15.) As an initial note, Plaintiff states in her response to the Individual Defendants that she is now only pursuing her § 1981 claims for racial harassment/discrimination against Defendants Veal and Willis and that the claims are asserted against the Defendants in their individual capacities. (Doc. 36 at 2-3; Doc. 45.)

To establish a hostile work environment claim under Title VII or § 1981, a plaintiff must show:

> that he belongs to a protected group; (2) that
> he has been subject to unwelcome harassment;
> (3) that the harassment must have been based
> on a protected characteristic of the employee,
> such as national origin; (4) that the
> harassment was sufficiently severe or
> pervasive to alter the terms and conditions of
> employment and create a discriminatorily
> abusive working environment; and (5) that the
> employer is responsible for such environment
> under either a theory of vicarious or of
> direct liability.

Mahone v. CSX Transportation, Inc., 652 F. App'x 820, 822–23 (11th Cir. 2016) (quoting Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)). To assess a disparate treatment claim based only on circumstantial evidence, such as Plaintiff's claim in this case, the Court must employ the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Burke–Fowler v. Orange Cty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). Under this test, a plaintiff must establish a prima facie case of racial discrimination by proving four elements: (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated "similarly situated" employees outside her class more favorably. Lewis v. City of Union City, Ga., 918 F.3d 1213, 1220–21 (11th Cir. 2019).

16

The Individual Defendants argue that no facts alleged attach a racial link to any of the statements made or actions taken against Plaintiff. (Doc. 26, Attach. 1 at 11.) In response, Plaintiff argues that her racial harassment claims are "intertwined with the sexual harassment claims" in that Plaintiff did not see the Defendants treat Caucasian females in the same manner. (Doc. 36 at 3.) The Court finds that, at this stage of the case, Plaintiff has failed to state a claim for racial harassment against Defendants Veal and Willis.

In her third amended complaint, Plaintiff alleges that "[b]ased on her observations, Officer Veal never spoke to a Caucasian or other non African-American female in a similar manner," and that she never saw Defendant Veal approach a non African-American female at all. (Doc. 25 at ¶ 49.) As to Defendant Willis, Plaintiff alleges that he "did not treat non African-American females in the same manner" as Plaintiff was treated. (Id. at ¶ 50.) The Court finds these factual allegations to be no more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that do not suffice. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. First, in regards to the hostile work environment claim, Plaintiff must allege sufficient factual allegations that the harassment she suffered was because of her protected class, e.g. her race. Plaintiff has failed to do so. Rather, her complaint paints a picture of gender and sexual harassment by various

superiors and co-workers. Because Plaintiff did not see Defendants Veal or Willis treat non African-American female employees similarly, she contends that her treatment must have been also due to her race. This is a bare assertion that is devoid of factual support. Likewise, the disparate treatment claims require a showing that other similarly situated employees outside of Plaintiff's class were treated differently. While Plaintiff does not have to prove the prima facie elements at this stage, Plaintiff must provide further factual enhancement of her allegations. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. In her third amended complaint, Plaintiff only stated that she did not see Defendant Veal treat other non African-American females similarly and that Defendant Willis did not treat non African-American females in the same manner. (Doc. 25 at ¶¶ 49-50.) These assertions amount to little more than legal conclusions. Accordingly, the Individual Defendants' Motion to Dismiss is **GRANTED** and the § 1981 claims for racial harassment/discrimination against Defendants Veal and Willis are **DISMISSED**.

C. Retaliation Claims

In her third amended complaint, Plaintiff brings claims for sexual/gender and racial retaliation pursuant to Title VII, 42 U.S.C. § 1981, through § 1983, and the Equal Protection Clause of the Fourteenth Amendment, brought through § 1983. (Doc. 25 at ¶

92.) Subsequently, Plaintiff abandoned numerous claims. In her response to this Court's order, Plaintiff states that, as against the Municipal Defendants, she maintains her § 1981 and Title VII retaliation claims related to race discrimination and her Title VII retaliation claims related to gender discrimination. (Doc. 45 at 1.) Plaintiff states that she only maintains her § 1981 retaliation claims against Defendants Adams, Perry, Cutter, Robinson, and W. Lovett.[5] (Id. at 2.)

Accordingly, the Court finds that Plaintiff has abandoned any claims for retaliation other than the claims specifically mentioned herein. As a result, the following claims are **DISMISSED:** (1) all claims of retaliation asserted pursuant to the Equal Protection Clause of the Fourteenth Amendment, brought through § 1983, for either gender or racial discrimination retaliation against Defendants Veal, Willis, Adams, Robinson, Perry, Cutter, and W. Lovett; (2) all claims of gender discrimination retaliation

---

[5] Plaintiff states in her response to the Individual Defendants' Motion to Dismiss that she brought § 1981 claims against the individually named Defendants for race discrimination/harassment and retaliation. (Doc. 36 at 2.) Additionally, in her response to this Court's order directing a summary of her claims, Plaintiff only includes gender retaliation claims against the Municipal Defendants and pursues those claims solely pursuant to Title VII. (Doc. 45 at 1.) Thus, the Court finds that Plaintiff's § 1981 retaliation claims against the Individual Defendants and Defendant W. Lovett are solely for racial retaliation.

against Defendants Veal, Adams, Willis, Robinson, Perry, Cutter, and W. Lovett asserted pursuant to Title VII and/or 42 U.S.C. § 1981, through § 1983; (3) all claims of racial discrimination retaliation against Defendants Veal and Willis, asserted pursuant to 42 U.S.C. § 1981, through § 1983; and (4) any claims asserted pursuant to Title VII for racial discrimination retaliation against Defendants Veal, Adams, Willis, Robinson, Perry, Cutter, and W. Lovett.

Turning now to the surviving claims, Plaintiff acknowledges in her brief that she is pursuing her retaliation claims pursuant to § 1981, through § 1983, only against Defendants Adams, Perry, Cutter, Robinson, and W. Lovett in their individual capacities. (Doc. 45 at 2.) As to Plaintiff's retaliation claims, the Individual Defendants argue that these claims must be dismissed because Plaintiff has failed to show that being placed on administrative leave with pay and being terminated was causally connected to any racial words or actions by the Individual Defendants. (Doc. 26, Attach. 1 at 15-17.) In her response to the Individual Defendants' Motion to Dismiss, Plaintiff argues that she has made out a prima facie case of retaliation because she participated in a protected activity by filing an EEOC charge

alleging sex and race discrimination, she was later terminated, and she was terminated due to her protected activity. (Doc. 36 at 7.)

To plead a prima facie case of retaliation under § 1981, a plaintiff must allege that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was some causal connection between the protected activity and the adverse employment action. Barr v. Bd. of Regents of Univ. Sys. of Georgia, No. 4:17-CV-203, 2019 WL 1099791, at *12 (S.D. Ga. Mar. 8, 2019) (citing Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008)).

In her third amended complaint, Plaintiff alleges that she filed an EEOC charge in November 2012 alleging race and sex discrimination/harassment, was placed on administrative leave with pay by Defendant W. Lovett in February 2013, sent additional information to the EEOC investigator in April 2013, was again placed on administrative leave with pay by Defendant W. Lovett on June 19, 2013, and, finally, was terminated on June 26, 2013. (Doc. 25 at ¶¶ 55, 61, 62, 64.) Plaintiff's termination was upheld by Defendant Cutter on July 8, 2013 after a hearing was held with input by Defendants Robinson, Adams, and Perry. (Id. at ¶ 64.)

The Court finds that the Individual Defendants' Motion to Dismiss should be denied in part. In sum, Plaintiff's third amended complaint alleges that Defendants W. Lovett, Perry, and Adams were aware of Plaintiff's complaints of sexual and racial harassment internally and retaliated against her. Plaintiff alleges that Defendant W. Lovett placed Plaintiff on administrative leave twice and was informed each time she made a complaint. (Doc. 25 at ¶¶ 60, 61, 64.) Plaintiff also alleges that she was informed that Defendant W. Lovett intended to "trump up felony charges" against her and that, a few days after being told this, she was placed on administrative leave and then terminated. (Id. at ¶¶ 63-64.) As to Defendant Adams, Plaintiff alleges that Defendant Adams was hostile towards her and told her to let Sergeant Garvin complete his investigation (Id. at ¶ 51), Sergeant Garvin told her that disciplinary action would be forthcoming (Id. at ¶ 53), that she received a reprimand from Defendant Adams and Sergeant Garvin regarding the incident with Officer Nelson (Id. at ¶ 58), and that Plaintiff went to Internal Affairs to file a complaint against Defendant Adams and Sergeant Garvin (Id. at ¶ 60). Plaintiff alleges that she subsequently communicated additional information to the EEOC investigator regarding her complaints of retaliatory

treatment, sexual harassment, and other actions towards her. (Id. at ¶ 62.) Plaintiff also alleged in her third amended complaint that she complained to Internal Affairs and Human Resources, specifically Defendant Perry. (Id. at ¶ 59; ¶ 41 (alleging that she was informed that her complaint/grievance was being forwarded to the Human Resources Department).) However, as to Defendants Robinson and Cutter, Plaintiff has not alleged any facts that these Defendants had actual knowledge of her complaints of harassment, the EEOC charge, or would otherwise have retaliatory animus towards Plaintiff. Accordingly, Plaintiff's § 1981 claim for racial retaliation should be dismissed as against Defendants Cutter and Robinson.

Individual Defendants also argue that they are entitled to qualified immunity on all claims asserted against them in their individual capacities. (Doc. 26, Attach. 1 at 18-21.) Thus, the Court must determine whether Defendants Perry and Adams are entitled to qualified immunity on Plaintiff's claims for racial retaliation pursuant to 42 U.S.C. § 1981.[6] In order to be entitled to qualified immunity, the officials first must "establish that

---

[6] The Court does not address Defendant W. Lovett at this stage because he has not filed a motion to dismiss arguing that he is entitled to qualified immunity.

23

they were acting within their discretionary authority during the incident." Manners v. Cannella, 891 F.3d 959, 967 (11th Cir. 2018). If it is shown that the officials acted within their discretionary authority, the burden shifts to the plaintiff(s) to demonstrate that qualified immunity is not appropriate. Id. at 968. Here, Plaintiff does not contest the Individual Defendants' assertion that the Individual Defendants were acting pursuant to their discretionary authority. (Doc. 36 at 9.) Thus, to overcome qualified immunity, Plaintiff must "show the [official's] conduct violated a constitutional right," and that right "was clearly established" at the time of the alleged conduct. Saucier v. Katz, 533 U.S. 194, 201, 102 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). We do not have to consider the Saucier prongs in sequential order. Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

As the Court stated, Plaintiff has alleged enough facts at this stage of the action to support a racial retaliation claim pursuant to § 1981 against Defendants Adams, W. Lovett, and Perry. The Court also finds that it is clearly established that retaliating against an employee for making race-based complaints violates § 1981. Bowman v. Birmingham, City of, 777 F. App'x 416,

421 (11th Cir. 2019) (citing CBOCS W., Inc. v. Humphries, 553 U.S. 442, 446, 128 S. Ct. 1951, 1954-55, 170 L. Ed. 2d 864 (2008); Andrews v. Lakeshore Rehab. Hosp., 140 F.3d 1405, 1412-13 (11th Cir. 1998)). The Court does not comment upon what facts discovery will bear out, but is sufficiently persuaded that Plaintiff's complaint alleges enough facts to survive the Individual Defendants' Motion to Dismiss as to Defendants Perry and Adams. Accordingly, Defendants' Motion to Dismiss Defendants Perry and Adams on the basis of qualified immunity is **DENIED**. Plaintiff's § 1981 racial retaliation claim against Defendants Perry, Adams, and W. Lovett shall proceed to discovery. However, as discussed, the Court **GRANTS** the Individual Defendants' Motion to Dismiss as to Defendants Robinson and Cutter.

### D. State Law Claims

In her third amended complaint, Plaintiff asserted state law claims for outrage (intentional infliction of emotional distress) and invasion of privacy against Defendants Veal, Adams, Willis, Robinson, Perry, Cutter, and W. Lovett, as well as against the Municipal Defendants. (Doc. 25 at ¶¶ 99-110.) However, Plaintiff has acknowledged in her brief to this Court's order dated December 6, 2019, that she is only pursuing the state law claim for

intentional infliction of emotional distress against Defendant W. Lovett, in his individual capacity, and against the Municipal Defendants. (Doc. 45 at 2.) Accordingly, Plaintiff's claims for outrage (intentional infliction of emotional distress) against Defendants Veal, Adams, Willis, Robinson, Perry, and Cutter are **DISMISSED**. Likewise, Plaintiff's claims for invasion of privacy against Defendants Veal, Adams, Willis, Robinson, Perry, Cutter, and W. Lovett are **DISMISSED**.

## II.   THE CITY'S MOTION TO DISMISS

The City has moved to dismiss numerous claims asserted by Plaintiff. (Doc. 30.) First, the City argues that all claims brought pursuant to 42 U.S.C. § 1983 must be dismissed because these claims are barred by the statute of limitations and because Plaintiff fails to allege a causative discriminatory municipal policy or custom. (Id. at 5-6.) The City also contends that Plaintiff's sexual harassment and race discrimination/harassment claims brought pursuant to Title VII and the Equal Protection Clause of the Fourteenth Amendment fail to state a claim. (Id. at 6-8.) The City moves to dismiss Plaintiff's retaliation claims on the grounds that (1) any claim of gender based retaliation asserted under the Equal Protection Clause fails because such a claim does not implicate the Equal Protection Clause and (2) Plaintiff has otherwise failed to plead a claim for retaliation. (Id. at 10-14.)

The City moves to dismiss the intentional infliction of emotional distress claim on the basis that it is time barred, it is barred by sovereign immunity, and because Plaintiff failed to state a claim. (Id. at 14-18.) The City likewise moves to dismiss the invasion of privacy, negligent/wanton retention, and negligent/wanton supervision and training claims on the basis that these claims are time barred, barred by sovereign immunity, and because Plaintiff failed to allege any facts to support these claims. (Id. at 18.) Finally, the City moves to dismiss any disparate treatment discrimination claims due to Plaintiff's failure to plead a prima facie case. (Id. at 18-22.)

A. Sexual Harassment Claims

1. Title VII

The City argues that Plaintiff's sexual harassment claims pursuant to Title VII and the Equal Protection Clause are due to be dismissed for failure to state a claim. (Doc. 30 at 7.) Specifically, the City contends that Plaintiff pleads, at most, merely offensive conduct which does not support a claim for a sexually hostile work environment. (Id.) In response, Plaintiff argues that she has pled a claim and is not required to plead every fact to survive a motion to dismiss. (Doc. 35 at 6.)

To establish a hostile environment sexual harassment claim under Title VII, an employee must show:

> (1) that he or she belongs to a protected
> group; (2) that the employee has been subject
> to unwelcome sexual harassment, such as sexual
> advances, requests for sexual favors, and
> other conduct of a sexual nature; (3) that the
> harassment must have been based on the sex of
> the employee; (4) that the harassment was
> sufficiently severe or pervasive to alter the
> terms and conditions of employment and create
> a discriminatorily abusive working
> environment; and (5) a basis for holding the
> employer liable.

Guthrie v. Waffle House, Inc., 460 F. App'x 803, 806 (11th Cir.

2012) (citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th

Cir. 1999)). "Workplace conduct is viewed cumulatively and in its

social context," however, simple teasing, offhand comments, and

isolated incidents, unless extremely serious, do not constitute a

hostile work environment. Id. (internal quotation marks and

citations omitted).

The City's Motion to Dismiss takes issue with the fourth

element: that the harassment was sufficiently severe or pervasive

to alter the terms and conditions of employment and create a

discriminatorily abusive working environment. (Doc. 30 at 7-8.)

The City argues that Guthrie, 460 F. App'x at 807, demonstrates

that the conduct complained of in this case is not severe or

pervasive enough to support Plaintiff's sexually hostile work

environment claims. (Doc. 30 at 8.)

This Court begins with a summary of the conduct Plaintiff alleged in her complaint contributed to or caused a sexually hostile work environment:

- Three comments by Defendant Veal in November 2011 in which Defendant Veal said "What's up good looking? . . . Hey good looking with your fine ass . . . . Oh you can't speak today . . . ."; "What's up with your fine ass self. Damn your ass is nice and round."; and "[y]ou are fine as hell. . . I like the way your ass is shaped . . . that is doggie style action." (Doc. 25 at ¶ 30.)

- A comment by Defendant Veal in December 2011 of "hey girl with your fine ass self. You can't speak? You know that your booty is round and look good . . . straight up doggie style action." (Id.)

- Another comment by Defendant Veal in December 2011, after Plaintiff reported him to Sergeant Few, in which he told Plaintiff that he "do[es] what the fuck [he] wants around here. [He] can't be touched. [He] say[s] what [he] want[s] to say to a bitch. . . . ." (Id.)

- An incident with Matthew Lopresti in December 2011 in which he "put his hands in the plaintiff's face and yelled at her during a domestic violence call." (Id. at ¶ 40.)

- An incident with Defendant Veal in which he entered the precinct and quickly closed the door when Plaintiff was getting off duty. She stepped to the side to let him pass when he then stepped in Plaintiff's face and said "What are you going to do now?" (Id. at ¶ 30.)

- A comment by Defendant Veal in January 2012 about another female officer in which he said to Plaintiff, "[Y]ou see that officer? She used to have a nice round booty like yours. She shitted out baby after baby and lost her shape. I used to fantasize about hitting that doggie style—not anymore." (Id.)

29

- An incident with Defendant Willis on January 5, 2012, when Plaintiff was training with him. Plaintiff alleges that he was "mean and degrading to her and harassed her on an accident scene," and made her re-position the patrol car numerous times and unjustly criticized the way she handled the incident. (Id. at ¶ 35.)

- A comment by Defendant Veal in February 2012 in which he stated that Plaintiff was "fine as hell" because she did not have any children. (Id. at ¶ 30.)

- An interaction with Defendant Willis on February 17, 2012, where he made degrading comments to Plaintiff, asked why she "had on 'dead people make up,'" and told Plaintiff that she could not come to work "looking better than these other females . . . ." (Id. at ¶ 38.)

- An incident with Defendant Veal on February 18, 2012 in which he yelled and cursed at Plaintiff and called Plaintiff a "bitch," a "motherfucker," and a "whore." (Id. at ¶ 39.)

- An incident with training officer Sergio Ahuyon on January 23, 2013 in which he ground his buttocks and ran his fingers up Plaintiff's right thigh and gripped her right butt cheek. (Id. at ¶ 59; Doc. 35 at 9.)

Plaintiff also generally alleges that her complaints of the conduct by Defendant Veal to numerous superiors went unheeded and that no action was taken to stop the harassing conduct by Defendant Veal and others.

In regards to the fourth element, "[t]he employee must subjectively perceive the harassment as sufficiently severe and pervasive, and this subjective perception must be objectively

30

reasonable." Guthrie, 460 F. App'x at 806 (internal quotation marks and citation omitted). The guiding considerations in the objective analysis are the totality of the circumstances, including the frequency and severity of the conduct, whether the conduct is physically threatening, and whether the conduct unreasonably interferes with the employee's job performance. Id.

The Court finds that Plaintiff has met her burden at this stage of the case regarding her Title VII claim. As noted by Plaintiff, Plaintiff's burden at this point of the case is not to prove a prima facie case of sexually hostile work environment. The United States Supreme Court noted in Twombly, 550 U.S. at 569-70, 127 S. Ct. at 1973, that Title VII employment discrimination cases do not require heightened fact pleading of specifics, but "only enough facts to state a claim to relief that is plausible on its face." Thus, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 545).

Regarding the first factor of the frequency and severity of the conduct, the Court finds that Plaintiff has alleged numerous specific instances of sexual harassment in the above paragraphs of her third amended complaint and contends elsewhere in her complaint

that sexual harassment was ongoing. Specifically, in regards to Defendant Veal, Plaintiff stated that he would make sexually derogatory comments to Plaintiff and included numerous instances in a non-exhaustive list. (Doc. 25 at ¶ 30.) Thus, the Court finds that Plaintiff has alleged enough facts to push her claim for a sexually hostile work environment over the line from conceivable to plausible. The second factor is admittedly more of a close call, however, Plaintiff has alleged numerous specific instances of conduct that would be considered physically threatening or by which Plaintiff felt physically threatened. (Id. at ¶ 30 (claiming that she was afraid when Defendant Veal stepped in her face while she was attempting to exit the precinct); Id. at ¶ 34 (alleging that she told Captain Phillips that she did not feel safe at the precinct); Id. at ¶ 40 (alleging that Matthew Lopresti put his hands in Plaintiff's face and yelled at her).) Plaintiff also alleged facts supporting the factor of whether the conduct unreasonably interfered with the employee's job performance. (Id. at ¶ 43 (alleging that Plaintiff told Major Julie Tolbert that she could not continue working in the environment at Precinct Two and that she would otherwise have to quit if she was not transferred); Id. at ¶ 34 (alleging that she told Captain Phillips that "things were so bad that she had requested to be moved to another precinct as the environment was too hostile").) Thus, assuming the purported instances of harassment outlined in Plaintiff's third amended

complaint to be true, Plaintiff has pled sufficient facts to support a reasonable inference that the harassment was objectively and subjectively severe and abusive. The City's Motion to Dismiss Plaintiff's Title VII claim for sex harassment is **DENIED**.

## 2. Equal Protection Clause of the Fourteenth Amendment, Brought Pursuant § 1983

### i. Statute of Limitations

The City argues that all of Plaintiff's claims that are brought pursuant to 42 U.S.C. § 1983 are barred by a two-year statute of limitations. (Doc. 30 at 5.) Plaintiff, however, argues that each claim must be reviewed independently and that, with regard to her gender discrimination/harassment claim under the Equal Protection Clause, the statute of limitations does not bar her claim because at least one complained about action took place within the limitations period. (Doc. 35 at 4.) Plaintiff does not contest that a two-year statute of limitations period is applicable to her claim. Rather, Plaintiff argues that her claims are timely as the last of the events constituting a sexually hostile work environment occurred in July 2013, when her termination was upheld, and she filed this action within two years from that date in April 2015.[7] (Id. at 4.)

---

[7] Plaintiff actually claims she filed her lawsuit in April 2013, however, the Court believes this to be a drafting error as Plaintiff's suit was not filed until April 2015.

Hostile work environment claims, which are based on the cumulative effects of individual acts, collectively may "constitute one 'unlawful employment practice.' " Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117, 122 S. Ct. 2061, 2074, 153 L. Ed. 2d 106 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)). Thus, the unlawful employment practice "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id., 536 U.S. at 115, 122 S. Ct. at 2073. However, the Court finds that Plaintiff's claim is barred by the statute of limitations. Plaintiff alleges that she was subjected to a sexually hostile work environment due to Defendant Veal and others' harassment of her, the failure of numerous supervisors to correct or stop the harassment, suspensions, and ultimately, her termination. However, from her complaint, it appears that the last act of sexual harassment occurred on January 23, 2013, when Patrol Training Officer Ahuyon ground himself against Plaintiff. (Doc. 25 at ¶ 59.)[8] Although Plaintiff argues that her placement on administrative leave without pay and ultimate termination are continuing acts of a sexually hostile work environment, Plaintiff's third amended complaint frames these employment

_____

[8] Plaintiff clarifies that the date of the alleged conduct occurred was January 23, 2013, not January 23, 2012, as alleged in the third amended complaint. (Doc. 35 at 9, n.3.)

actions as acts of retaliation for complaining about the sexually and racially hostile work environment and the discrimination. (Id. at ¶ 60 (alleging that being treated hostilely by Shoop and Defendant W. Lovett being informed of her complaints were acts of retaliation); ¶ 67 (alleging that she filed an EEOC charge alleging retaliation in her termination on July 10, 2013); ¶ 76 ("Based on the continuous harassing conduct, defendants' lack of response and further harassment and retaliation, plaintiff's work conditions became so intolerable, she was retaliatorily discharged.")). Thus, even being generous with the dates, the last act of sexual harassment or act that constituted a sexually hostile work environment was January 23, 2013. As Plaintiff filed her complaint in this Court on April 26, 2015, the two-year statute of limitations bars Plaintiff's claim for sexually hostile work environment brought pursuant to the Equal Protection Clause, through § 1983. The City's Motion to Dismiss Plaintiff's Equal Protection Clause claim for sex harassment is **GRANTED**.

B. Racial Harassment/Discrimination Claims

In her third amended complaint, Plaintiff asserted claims for race discrimination/harassment pursuant to Title VII, 42 U.S.C. § 1983, and the EPC. (Doc. 25 at ¶¶ 79-90.) Plaintiff has since clarified that she is maintaining the racial harassment/discrimination claims against the Municipal Defendants under Title VII and § 1981. (Doc. 45 at 1.) Thus, Plaintiff has

35

abandoned her claims for racial harassment/discrimination brought pursuant to the EPC against the Municipal Defendants. As a result, all EPC claims for racial harassment/discrimination are **DISMISSED**.

The City moves to dismiss Plaintiff's other claims of racial harassment, contending that Plaintiff has failed to properly plead such claims. (Doc. 30 at 8-10.) At the outset, the Court notes that discrimination claims, including hostile work environment claims, brought under 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, are subject to the same standards of proof and employ the same analytical framework. Nurse v. City of Alpharetta, 775 F. App'x 603, 606 (11th Cir. 2019) (citing Bryant v. Jones, 575 F.3d 1281, 1298 n.20 (11th Cir. 2009)). Accordingly, for purposes of determining whether Plaintiff has stated a claim, the Court considers both the Title VII and the § 1981 claims together.

To establish a hostile work environment claim under Title VII or § 1981, a plaintiff must show:

> that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

Mahone, 652 F. App'x at 822-23 (quoting Miller, 277 F.3d at 1275).
To assess a disparate treatment claim based only on circumstantial
evidence, such as Plaintiff's claim in this case, the Court must
employ the framework established by the Supreme Court in McDonnell
Douglas Corp. v. Green, 411 U.S. 792 (1973). Burke-Fowler, 447
F.3d at 1323. Under this test, a plaintiff must establish a prima
facie case of racial discrimination by proving four elements: (1)
that she belongs to a protected class, (2) that she was subjected
to an adverse employment action, (3) that she was qualified to
perform the job in question, and (4) that her employer treated
"similarly situated" employees outside her class more favorably.
Lewis, 918 F.3d at 1220-21.

The City argues that Plaintiff has alleged no facts to support
her racially hostile work environment claim as all allegations are
generalized allegations and Plaintiff has failed to "allege[] a
single instance of racial harassment, much less harassment arising
to the level required to maintain a hostile work environment
claim." (Doc. 30 at 9.) In response, Plaintiff argues that her
sexual harassment allegations also "form the basis of her racial
harassment allegations because she had observed her harassers in
the workplace and had never seen them treat Caucasian females in
the same manner" that they treated Plaintiff as an African-American
female. (Doc. 35 at 10.)

The Court finds that, at this stage of the case, Plaintiff has failed to state a claim as to the City for racial harassment. As explained above in regards to the Individual Defendants, Plaintiff's allegations regarding the treatment based on her race are limited to paragraphs stating that she did not see the Individual Defendants treat non African-American females the same way they treated her. (Doc. 25 at ¶ 49-50.) The Court finds these factual allegations to be no more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that do not suffice. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. First, in regards to the hostile work environment claim, Plaintiff must allege sufficient factual allegations that the harassment she suffered was because of her protected class, e.g. her race. Plaintiff has failed to do so. Rather, her complaint paints a picture of gender and sexual harassment by various superiors and co-workers. Because Plaintiff did not see Defendants Veal or Willis treat non African-American female employees similarly, she contends that her treatment must have been also due to her race. This is a bare assertion that is devoid of factual support. Likewise, any disparate treatment claims also fail. Disparate treatment claims require a showing that other similarly situated employees outside of Plaintiff's class were treated differently. While Plaintiff does not have to prove the prima facie elements at this stage, Plaintiff must provide further factual enhancement of her allegations. Iqbal, 556

U.S. at 678, 129 S. Ct. at 1949. In her third amended complaint, Plaintiff only stated that she did not see non African American females treated similarly. (Doc. 25 at ¶¶ 49-50.) These assertions amount to little more than legal conclusions. Accordingly, the City's Motion to Dismiss is **GRANTED** and Plaintiff's Title VII and § 1981 claims for racial harassment/discrimination against Defendant City are **DISMISSED**.[9]

C. Retaliation Claims

In her third amended complaint, Plaintiff asserted claims against the City for retaliation pursuant to Title VII, § 1981, and the Equal Protection Clause. (Id. at ¶¶ 91-98.) Plaintiff has since clarified that she is maintaining the following claims against the Municipal Defendants: claims for retaliation related to racial discrimination brought pursuant to § 1981, through § 1983, claims for retaliation related to racial discrimination brought pursuant to Title VII, and claims for gender discrimination retaliation brought pursuant to Title VII. (Doc. 45 at 1.) Thus, Plaintiff has abandoned the following claims, to the extent that they were asserted in her third amended complaint: (1) all claims for retaliation, gender or racially based, brought pursuant to the Equal Protection Clause against all Defendants; and (2) all claims

---

[9] Because Plaintiff's § 1981 claim fails to state a claim, the Court does not reach the City's alternative arguments for dismissal.

for retaliation related to gender discrimination brought pursuant to § 1981, through § 1983, against all Defendants. These claims are **DISMISSED.** The Court will now proceed to the remaining retaliation claims asserted against the City.

### 1. § 1981 Racial Discrimination Retaliation Claims

#### i. Statute of Limitations

The City contends that Plaintiff's claims that are based on § 1983 are subject to dismissal because the claims are barred by the two-year statute of limitations. (Doc. 30 at 5.) In response, Plaintiff argues that her § 1981 claim, brought pursuant to § 1983, has a statute of limitations of four years and, therefore, is not barred. (Doc. 35 at 5.) In Baker v. Birmingham Bd. of Educ., 531 F.3d 1336, 1338 (11th Cir. 2008), the Eleventh Circuit found that the plaintiff's claims for racial discrimination and retaliation were made possible by the 1991 Act, and accordingly, that the claims were subject to the four-year statute of limitations provision of 28 U.S.C. § 1658 rather than the two-year statute of limitations based upon state law for § 1983 actions. Accordingly, as Plaintiff alleges a retaliation claim under § 1981, the Court finds that the four-year statute of limitations applies and Plaintiff's claim is not barred.

#### ii. Municipal Liability

The City also argues that all claims based or brought pursuant to § 1983 must be dismissed because Plaintiff has failed to plead

any facts indicating or supporting the existence of a policy or custom that led to her alleged constitutional injuries. (Doc. 30 at 6.)

To impose § 1983 liability on a municipality, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). A municipality may be liable under § 1983 only where "the deprivation at issue was undertaken pursuant to city 'custom' or 'policy,' and not simply on the basis of respondeat superior." Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479 (11th Cir. 1991). To prove § 1983 liability against a municipality based on custom, "a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." Id. at 1481 (internal quotation marks and citation omitted). Thus, a longstanding and widespread practice "is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Id.

The Court finds that Plaintiff has not alleged enough facts at this stage to survive dismissal of her § 1981 claims for retaliation. Plaintiff alleged in her third amended complaint that

(1) she complained of the harassing conduct by Defendant Veal to numerous supervisors, including Sergeant Few, Captain Phillips, and Major Julie Tolbert, on numerous occasions (Doc. 25 at ¶¶ 31; 32; 33; 34; 37; 39; 43), (2) upon reporting the harassing conduct, nothing was done or that the supervisors told her to "ignore" Defendant Veal and to "stop complaining," (Id.), (3) she complained of conduct by other officers and no remedial action was taken (Id. at ¶¶ 40), (4) her complaint regarding the incident with Matthew Lopresti was being forwarded to Human Resources (Id. at ¶ 41), (5) she was interviewed by Sergeant Cleveland Lovett and Lieutenant Andre Oliver at the Internal Affairs Office and was told that her work environment was not hostile but the allegations were "just a conduct issue" on Defendant Veal's part (Id. at ¶ 42), (6) Plaintiff began to experience retaliation after being transferred to another precinct (Id. at ¶ 45) including being found guilty of misconduct related to her complaints of sexual harassment (Id. at ¶ 52), (7) Plaintiff reported the incident involving Ahuyon to Defendant Perry (Doc. 25 at ¶ 59), and (8) Sergeant Shoop, after Plaintiff made another complaint to Internal Affairs, "called Lieutenant Oliver for him to notify Chief Lovett that the plaintiff was again filing a complaint," and that Defendant W. Lovett was informed every time Plaintiff made a complaint (Id. at ¶ 60).

Plaintiff also alleged that: (1) she made her first EEOC complaint on November 19, 2012, alleging race and sex

42

discrimination/harassment and retaliation (Doc. 25 at ¶ 55), (2) she made additional complaints to superiors regarding the conduct she perceived to be harassing in December 2012, January 2013, and February 2013 (Id. at ¶¶ 57, 59, 60), (3) she was placed on administrative leave without pay in February 2013 by Defendant W. Lovett (Id. at ¶ 61), (4) she sent additional information to the EEOC investigator in April 2013[10] (Id. at ¶ 62), (5) Plaintiff was told that Defendant W. Lovett intended to "trump up felony charges" against her on June 12, 2013 (Id. at ¶ 63), (6) Plaintiff was placed on administrative leave with pay on June 19, 2013 and then terminated on June 26, 2013 (Id. at ¶ 64), and (7) her termination was upheld by Defendant Cutter on July 8, 2013 after a hearing with input from Defendants Robinson, Adams, and Perry (Id.). Plaintiff alleged that, "despite the ongoing harassment and defendants' knowledge thereof, defendants failed to stop or prevent the harassing behavior." (Id. at ¶ 56.)

The Court finds that Plaintiff has not pled enough facts to proceed on her § 1981 claim. Municipal liability may attach where "an official policy [has been] enacted by its legislative body," "if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure," or on "the basis of ratification when a subordinate public official makes

---

[10] As noted above, Plaintiff's third amended complaint appears to misstate the date as July 2012.

an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." <u>Hoefling v. City of Miami</u>, 811 F.3d 1271, 1279 (11th Cir. 2016) (internal quotation marks and citation omitted). First, as the City points out, Plaintiff did not allege in her third amended complaint that the retaliation she suffered was a result of a policy or custom by the City or that her constitutional injury was a result of such custom or policy. (<u>See</u> Doc. 25 at ¶¶ 91-98.) Plaintiff did not allege any facts that others were retaliated against for making complaints of harassment and/or discrimination, that there was a widespread practice of retaliating against those who complained about harassment, or any other facts supporting a plausible inference that the retaliatory conduct she experienced was a part of a larger custom or longstanding policy by Defendant City.

The closest method by which Plaintiff may be attempting to establish municipal liability would be through the "policymaker" avenue. However, Plaintiff still did not allege that the retaliation she faced was a result of any policy, practice, or custom of the City. In <u>Hoefling</u>, 811 F.3d at 1280, the Eleventh Circuit stated that "identifying and proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard, and not a pleading requirement.' " (quoting <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506, 510, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002)). Rather, all the plaintiff must do is "allege a

policy, practice, or custom of the City" which caused the constitutional deprivation. Id. The Eleventh Circuit ultimately concluded that the plaintiff met his burden because he included allegations that he was told by local mariners that the city habitually failed to adhere to the law and appropriate procedures regarding derelict vessels, that he was independently aware of the city's failures to adhere to the law and procedures, that the city would refer to the practice of rounding up "ugly" boats as a "cleanup program," and that his own vessel was seized. Id. Based on these allegations, Plaintiff further alleged that the city had a custom, policy, or practice of failing to abide by the state laws, regulations, and procedures regarding the removal of derelict vessels in state waters and that his own vessel was seized as a result of the custom, policy, or practice. Id. The Eleventh Circuit found these allegations to be sufficient and found that the allegations were not "naked allegations." Id. at 1281. In this case, although Plaintiff paints a vivid picture of retaliation, Plaintiff has not provided facts that demonstrate a pattern of such conduct outside of her own experiences. Plaintiff does not include any allegations that others suffered retaliation for reporting harassment, that the City had such a policy or practice, or any facts that the retaliation she allegedly suffered was a result on a municipal custom, policy, or practice. Accordingly, Plaintiff's § 1981 claim for retaliation is **DISMISSED**.

45

2. Racial and Gender Discrimination Retaliation Claims
   Brought Pursuant to Title VII

The City argues that Plaintiff's claims for retaliation must be dismissed because Plaintiff fails to state a prima facie case for retaliation.[11] (Doc. 30 at 10.) Specifically, the City contends that Plaintiff has failed to allege facts supporting the second and third elements of the prima facie case of retaliation: that there was a materially adverse action and that there is a causal link between the protected activity and the adverse action. (Id. at 11.) In response, Plaintiff contends that she has supported her Title VII retaliation claims and that she has sufficiently alleged that her adverse employment actions were a result of Plaintiff's opposition to the harassment she suffered. (Doc. 35 at 11.)

A Title VII retaliation claim "requires this showing: (1) the plaintiff engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." Edwards v. Ambient Healthcare of Ga., Inc., 674 F. App'x 926, 929–30 (11th Cir. 2017) (citing Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010)). "[T]he standard for demonstrating a 'materially adverse action' is now viewed from the perspective of

---

[11] The City groups Plaintiff's retaliation claims under Title VII together in the motion to dismiss and, therefore, the Court considers Plaintiff's retaliation claims based on gender harassment/discrimination and racial harassment/discrimination together.

46

a reasonable employee," and only requires showing that the action
" 'well might have dissuaded a reasonable worker from making or
supporting a charge of discrimination.' " Brathwaite v. Sch. Bd.
of Broward Cty., Fla., 763 F. App'x 856, 860 (11th Cir. 2019)
(quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53,
68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006)). "To establish
a causal connection, a plaintiff must show that the decision-
makers were aware of the protected conduct, and that the protected
activity and the adverse actions were not wholly unrelated." Greene
v. Ala. Dep't of Revenue, 746 F. App'x 929, 932 (11th Cir. 2018),
cert. denied, 139 S. Ct. 1295, 203 L. Ed. 2d 419 (2019) (internal
quotation marks and citation omitted). Thus, a causal connection
may be inferred when there is a "close temporal proximity between
the protected activity and the adverse action." Id. (citing Thomas
v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007)).
However, temporal proximity, without more, must be very close. Id.

The City first argues that Plaintiff has not show that she
suffered materially adverse actions because Plaintiff did not
allege that the "discipline, transfer, job/work assignments"
reduced her pay, benefits, or responsibilities such that they
demonstrate an adverse effect. (Doc. 30 at 11.) The City focuses
on the wrong standard. As stated above, materially adverse actions
are those that "well might have dissuaded a reasonable worker from
making or supporting a charge of discrimination." Burlington, 548

U.S. at 68, 126 S. Ct. at 2415. This standard is context-dependent and depends on the "particular circumstances" of the case. Id. The Court finds that Plaintiff has sufficiently pled her retaliation claims under Title VII. As discussed above, Plaintiff alleged numerous work write-ups, other disciplines, and comments that she contends were intended to further harass her and intimidate her into silence. As this stage of the action, these allegations are sufficient.[12]

As to the third element, causation, the City contends that her claim lacks the requisite temporal proximity between her November 2012 EEOC charge and her June 2013 suspension and termination. (Doc. 30 at 12.) First, as previously discussed, the June 2013 suspension and termination are not the only "materially adverse" actions identified. Second, viewing Plaintiff's allegations in sum, the Court finds that Plaintiff has raised an inference of causation.

Plaintiff has alleged that: (1) she made her first EEOC complaint on November 19, 2012, alleging race and sex discrimination/harassment and retaliation (Doc. 25 at ¶ 55), (2) she made additional complaints to superiors regarding the conduct

---

[12] The Court also notes that the Eleventh Circuit assumed, without deciding, that reprimands could constitute a materially adverse action in Brathwaite, 763 F. App'x at 860. Accordingly, the Court finds that Plaintiff's allegations regarding her discipline, transfer, and work/job assignments survive the motion to dismiss.

she perceived to be harassing in December 2012, January 2013, and February 2013 (Id. at ¶¶ 57, 59, 60), (3) she was placed on administrative leave without pay in February 2013 by Defendant W. Lovett (Id. at ¶ 61), (4) she sent additional information to the EEOC investigator in April 2013 (Id. at ¶ 62), (5) Plaintiff was told that Defendant W. Lovett intended to "trump up felony charges" against her on June 12, 2013 (Id. at ¶ 63), (6) Plaintiff was placed on administrative leave with pay on June 19, 2013 and then terminated on June 26, 2013 (Id. at ¶ 64), and (7) her termination was upheld by Defendant Cutter on July 8, 2013 after a hearing with input from Defendants Robinson, Adams, and Perry (Id.).

The Court does not find Plaintiff's timeline, as alleged in her third amended complaint, so lacking in proximity as to warrant dismissal. Although seven months passed between Plaintiff filing her EEOC charge in November 2012 and being terminated in June 2013, the timeline alleged by Plaintiff also includes additional complaints by Plaintiff and being placed on administrative leave in February 2013. Based on these intervening acts that Plaintiff maintains are materially adverse actions, the Court finds that Plaintiff's temporal proximity is sufficient at this stage to survive dismissal. Moreover, the Court notes that this is not a case in which Plaintiff seeks to rely solely on the temporal proximity between actions. See, e.g., Thomas, 506 F.3d at 1364 (stating that, without "other evidence tending to show causation,"

a substantial delay between the protected expression and the adverse action fails to establish causation); <u>Joyner v. City of Atlanta</u>, No. 1:16-CV-1780-TWT-LTW, 2018 WL 1442931, at *5 (N.D. Ga. Feb. 23, 2018), report and recommendation adopted, No. 1:16-CV-1780-TWT, 2018 WL 1427941 (N.D. Ga. Mar. 22, 2018) (collecting cases and noting that a pattern of antagonism following the protected conduct is one type of circumstantial evidence that shows a causal connection). In addition to the temporal proximity above, Plaintiff also alleges that Defendant W. Lovett was informed every time she made a complaint, that she was told that Defendant W. Lovett intended to "trump" up felony charges against her, that she continued to oppose the harassment and retaliation she allegedly suffered, and that she provided additional information to the EEOC investigator after which she was placed on administrative leave. These facts support an inference of causation at this stage of the case and the Court finds this sufficient to plead a claim for retaliation under Title VII. As a result, the City's Motion to Dismiss Plaintiff's Title VII claims for retaliation premised on both racial and gender harassment/discrimination is **DENIED**.

D. <u>State Law Claims</u>

    1. <u>Claims for Invasion of Privacy, Negligent/Wanton Retention, and Negligent/Wanton Supervision and Training</u>

In her third amended complaint, Plaintiff pled claims for intentional infliction of emotional distress and invasion of

privacy against all Defendants and claims for negligent/wanton retention and negligent/wanton supervision and training against the Municipal Defendants. (Doc. 25 at ¶¶ 99-123.) However, Plaintiff has since abandoned her claims of invasion of privacy, negligent/wanton retention, and negligent/wanton supervision and training against all Defendants. (Doc. 45 at 1-2.) Accordingly, Plaintiff's claims of invasion of privacy, negligent/wanton retention, and negligent/wanton supervision and training against Defendant City are **DISMISSED.**

### 2. Outrage/Intentional Infliction of Emotional Distress

Plaintiff does maintain her claim for outrage/intentional infliction of emotional distress against the Municipal Defendants. (Id. at 1-2.) The City moves to dismiss this claim against it because the claim is time barred and because Plaintiff has failed to plead a prima facie case. (Doc. 30 at 14.) The City also argues that the state law claim against the City is barred by sovereign immunity. (Id. at 17.) In response, Plaintiff contends that the claim is timely, that she had adequately stated a claim, and that "the City should not be provided immunity on these grounds since there is an allegation of malice by the City's top representative to the police department, Chief Lovett." (Doc. 35 at 13.) Plaintiff does not otherwise address the City's argument regarding sovereign immunity.

First, the Court notes that, under Georgia law, sovereign immunity extends to the City and can only be waived by a legislative act of the General Assembly. Ga. Const. of 1983, Art. IX, Sec. II, Par. IX; Shelnutt v. Mayor of Savannah, 349 Ga. App. 499, 505, 826 S.E.2d 379, 384 (Ga. Ct. App. 2019), cert. denied (Nov. 18, 2019); Godfrey v. Ga. Interlocal Risk Mgmt. Agency, 290 Ga. 211, 214, 719 S.E.2d 412, 414 (2011). "A waiver of sovereign immunity . . . must be established by the party seeking to benefit from that waiver." Shelnutt, 349 Ga. App. at 505. Plaintiff, other than a reference to the fact that she has alleged that Defendant W. Lovett acted with malice, has not shown a waiver of sovereign immunity for her claim for intentional infliction of emotional distress, nor has this Court found one. Accordingly, the City's Motion to Dismiss Plaintiff's claim of intentional infliction of emotional distress is **GRANTED**.

## CONCLUSION

For the foregoing reasons, the Individual Defendants' Motion to Dismiss the Third Amended Complaint (Doc. 26) is **GRANTED IN PART** and **DENIED IN PART** and the City's Motion to Dismiss the Third Amended Complaint (Doc. 30) is **GRANTED IN PART** and **DENIED IN PART**. In addition to the claims that Plaintiff has abandoned (see Doc. 45), the Court has dismissed the following claims: (1) the Equal Protection Clause claim, brought pursuant to 42 U.S.C. § 1983, for sexual harassment against the City; (2) the 42 U.S.C. § 1981,

through § 1983, claims for racial harassment/discrimination against Defendants Veal, Willis, and the City; (3) the Title VII claims for racial harassment/discrimination against the City; (4) the 42 U.S.C. § 1981, through § 1983, retaliation claim related to racial harassment/discrimination against Defendants Cutter, Robinson, and the City; and (5) the state law claim for intentional infliction of emotional distress against the City.

SO ORDERED this 5th day of February 2020.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA